## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

        Plaintiff,

        Case No.

v.

FCA US, LLC,

        Defendant.

        **COMPLAINT**
        **AND JURY DEMAND**

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII") and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of religion and to provide appropriate relief to LaBaron Wilkins ("Mr. Wilkins" or "Charging Party"). As alleged with greater particularity below, Plaintiff Equal Opportunity Employment Commission ("the EEOC" or "Commission") alleges that Defendant FCA US, LLC ("Defendant" or "FCA") violated Title VII when it discriminated against Mr. Wilkins by refusing to accommodate his sincerely held religious beliefs, retaliating against him, and terminating his employment.

1

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.

2.      This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

3.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Michigan.

## PARTIES

4.      The Commission is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

5.      Defendant FCA US, LLC, a Delaware limited liability company, is an American subsidiary of the publicly traded multinational automative company Stellantis N.V.

2

6.     At all relevant times, Defendant has continuously been doing business in the State of Michigan, with a principal place of business in Auburn Hills, Michigan.

7.     At all relevant times, Defendant has owned and operated auto manufacturing facilities in Warren, Romulus, and Centerline, Michigan.

8.     At all relevant times, Defendant has continuously had at least 15 employees.

9.     At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

10.     More than 30 days prior to the filing of this lawsuit, Mr. Wilkins filed a charge of discrimination with the Commission alleging violations of Title VII by Defendant.

11.     Defendant received notice of Mr. Wilkins's charge of discrimination.

12.     Defendant participated in the administrative investigation of Mr. Wilkins's charge of discrimination.

13.     On November 25, 2024, the Commission issued Defendant a Letter of Determination, notifying Defendant that the Commission found reasonable cause to believe Defendant violated Title VII.

14.     The November 25 Letter of Determination invited Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

15.     Prior to the filing of this lawsuit, the Commission also engaged in communications with Defendant to provide the Defendant the opportunity to remedy the unlawful employment practice.

16.     Defendant opted not to participate in conciliation of Mr. Wilkins's charge of discrimination. Therefore, the Commission was unable to secure a conciliation agreement from Defendant.

17.     On December 23, 2024, the Commission issued Defendant a Notice of Conciliation Failure.

18.     Defendant received the Notice of Conciliation Failure.

19.     All conditions precedent to the filing of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

20.   Defendant is a wholly owned subsidiary of Stellantis N.V., a multi-national, publicly traded, auto-manufacturing company with manufacturing facilities across the globe.

21.   Defendant owns and operates approximately eleven facilities in Michigan.

22.   Defendant employs over 1,000 employees in Michigan and over 77,000 employees corporate wide.

23.   During the relevant period, Defendant maintained at least three shifts in its Michigan auto manufacturing and distribution facilities:

   a) First shift, beginning Monday at 6 am and ending Friday at 2:30 pm;

   b) Second shift, beginning Monday at 3 pm and ending Friday at 11:30 pm; and

   c) Third shift, beginning Sunday at 10 pm and ending Friday at 6 am.

24.   During the relevant period, Defendant's bargaining-unit employees were subject to Defendant's attendance procedure set forth

in the collective bargaining agreement between Defendant and the United Auto Workers union ("UAW").

25.    Defendant's attendance procedures consist of a seven-step progressive disciplinary process for unexcused absences by bargaining-unit employees. Each unexcused absence counts as an occurrence or "step" and is subject to a disciplinary action in the process:

> First step: verbal warning
>
> Second step: verbal warning
>
> Third step: written warning
>
> Fourth step: written warning
>
> Fifth step: 3-day disciplinary layoff
>
> Sixth step: 10-day disciplinary layoff
>
> Seventh step: discharge.

26.    At the time of hire and throughout his employment with Defendant, Mr. Wilkins was an hourly bargaining-unit employee.

<u>Mr. Wilkins' Sincerely Held Religious Beliefs</u>

27.    Mr. Wilkins practices orthodox Judaism, which includes studying and practicing the 613 laws of the Torah and observing the Sabbath and holy religious Jewish holidays.

28.     Mr. Wilkins has a sincerely held religious belief that he must abstain from working during the Sabbath, a 24-hour period that begins Friday sundown and ends Saturday sundown.

29.     Mr. Wilkins disclosed his religion and his observation of the Sabbath to Defendant during Defendant's new employee orientation.

30.     Throughout his employment with Defendant, Mr. Wilkins provided Defendant with oral and written notice that he observed the Sabbath and would need a religious accommodation.

31.     Throughout his employment with Defendant, Mr. Wilkins sincerely observed holy religious Jewish holidays, such as Passover.

<u>Mr. Wilkins's Requests for a Religious Accommodation (2018-2021)</u>

32.     Defendant hired Mr. Wilkins on or about October 2018, as a first-shift temporary employee ("TPT") at Defendant's Warren, Michigan, distribution facility, which did not conflict with his observation of the Sabbath.

33.     On or about November or December of 2018, Defendant instituted mandatory Saturday work, which conflicted with Mr. Wilkins's observation of the Sabbath.

34.     Defendant issued Mr. Wilkins disciplinary action for attendance violations based on Mr. Wilkins not working mandatory Saturdays.

35.     Mr. Wilkins, with the assistance of his UAW steward at the time, requested a religious accommodation and removal of the attendance violations he accrued.

36.     Defendant eventually approved Mr. Wilkins's 2018 religious accommodation request and removed the attendance violations related to mandatory Saturday work.

37.     In 2019, Defendant transferred Mr. Wilkins, who was still a TPT, to its Romulus, Michigan, facility and assigned him to the second shift, which conflicted with his observation of the Sabbath.

38.     Mr. Wilkins once again submitted a request to not work during the Sabbath due to his religion.

39.     Defendant's supervisors at the Romulus facility approved Mr. Wilkins's religious accommodation to be excused from working during the Sabbath, excusing Mr. Wilkins from working the whole shift on Fridays.

40.    On or about February 2020, Defendant offered Mr. Wilkins a full-time, second-shift position at Defendant's Sherwood, Michigan, facility.

41.    In 2020, Mr. Wilkins's lack of seniority made him ineligible for a first-shift position with Defendant.

42.    In 2020, Mr. Wilkins requested a religious accommodation to not work the Sabbath, which Defendant eventually approved, excusing Wilkins from working the whole shift on Fridays.

43.    On or about November 2021, Defendant approved Mr. Wilkins's bid to transfer to its Centerline, Michigan, distribution facility as a first-shift stock picker, which did not conflict with his observation of the Sabbath.

44.    Soon after transferring to Defendant's Centerline distribution facility, Defendant bumped Mr. Wilkins off his first-shift position and required him to work the second shift, which conflicted with his observation of the Sabbath.

45.    Mr. Wilkins sought a religious accommodation from the second-shift schedule, which Defendant approved, excusing Mr. Wilkins from working on Fridays.

Mr. Wilkins's Requests for a Religious Accommodation (2022-2023)

46.    In or about January 2022, Defendant stopped accommodating Mr. Wilkins by excusing his Friday absences and issued him disciplinary action for not working on Fridays.

47.    Mr. Wilkins, with the assistance of his UAW steward at the time, complained of Defendant's revocation of his religious accommodation and subsequent discipline.

48.    In August 2022, Defendant stopped accommodating Mr. Wilkins's second-shift Friday absences and told him that moving forward he would have three options: (a) to use his paid time off to cover Friday absences; (b) if he did not have any "PA/vacation time," report for work earlier and leave earlier on Fridays; or (c) bid on available dayshift jobs that he had seniority to hold.

49.    Mr. Wilkins did not have enough paid time off to cover whole-day Friday absences.

50.    Defendant's offer to adjust Mr. Wilkins's Friday schedule was contingent on Wilkins's using all his paid time off.

51.    Mr. Wilkins did not have enough seniority to bid on a dayshift job.

10

52.    Mr. Wilkins had subsequent communications with his UAW steward and Defendant's human resources staff who suggested he bid for a third shift position, which he did.

53.    On August 3, 2022, Mr. Wilkins submitted two bids to transfer to a third shift position, which would resolve the conflict he had between his observation of the Sabbath and working the second shift.

54.    On Friday, August 5, 2022, Mr. Wilkins did not work due to his observation of the Sabbath.

55.    Defendant issued Mr. Wilkins a Third step disciplinary action for not working on Friday, August 5.

56.    Defendant refused to remove the Third step disciplinary action from Mr. Wilkins's personnel records.

57.    Defendant refused to provide Mr. Wilkins with unpaid leave for his Friday, August 5 absence.

58.    While Mr. Wilkins waited for Defendant to approve his bid to transfer to a third-shift position, he was forced to use his vacation time to cover his Friday, August 12 and Friday, August 19 absences, which led to a decrease in his paid leave balance.

59.     On or about August 22, 2022, Mr. Wilkins began working as a third-shift packager at Defendant's Centerline, Michigan, distribution center, which did not conflict with his observation of the Sabbath.

60.     Mr. Wilkins worked without issue on the third shift until October 2022, when Defendant instituted mandatory Saturday work.

61.     Mr. Wilkins requested a religious accommodation to be excused from working mandatory Saturdays due to the conflict with his observation of the Sabbath.

62.     Defendant did not engage with Mr. Wilkins regarding his October 2022 request for a religious accommodation.

63.     Mr. Wilkins did not work on Saturday, October 22, 2022, due to his observation of the Sabbath.

64.     Defendant refused to excuse Mr. Wilkins from mandatory Saturday work or provide Mr. Wilkins with unpaid leave and instead issued him a Fourth step disciplinary action for his October 22 absence.

65.     Mr. Wilkins did not work on Saturday, October 29, 2022, due to his observation of the Sabbath.

66.     Defendant refused to excuse Mr. Wilkins from mandatory Saturday work or provide Mr. Wilkins with unpaid leave and instead

issued him a Fifth step disciplinary action and 3-day disciplinary layoff without pay for his October 29 absence.

67.    On or about December 1, 2022, Mr. Wilkins, with the assistance of his UAW steward at the time, filed a grievance against Defendant for its 3-day disciplinary layoff of Wilkins for absences related to his religious beliefs.

68.    Defendant required Mr. Wilkins to work on Saturday, December 3, 2022, and Saturday, December 10, 2022, which conflicted with Mr. Wilkins's observation of the Sabbath.

69.    Defendant refused to excuse Mr. Wilkins from mandatory Saturday work or provide Mr. Wilkins with unpaid leave and instead issued Mr. Wilkins an additional Fifth step disciplinary action for not working Saturday, December 3, 2022.

70.    Defendant refused to excuse Mr. Wilkins from mandatory Saturday work or provide Mr. Wilkins with unpaid leave and instead issued Mr. Wilkins a Sixth step disciplinary action and issued him a 10-day disciplinary layoff without pay, for not working Saturday, December 10, 2022.

71.    In December 2022, Mr. Wilkins sought and was approved for FMLA leave due to the physical and mental health effects of Defendant's refusal to accommodate his sincerely held religious beliefs.

72.    On or about January 4, 2023, Mr. Wilkins filed a charge of discrimination with the Michigan Department of Civil Rights (MDCR) based on Defendants' refusal to provide a religious accommodation.

73.    The Commission sent Defendant a copy of Mr. Wilkins's MDCR charge of discrimination on January 19, 2023.

74.    Mr. Wilkins returned from approved medical leave in early March of 2023 and Defendant applied its 10-day disciplinary layoff without pay for Mr. Wilkins's Saturday absences.

75.    On March 24, 2023, Mr. Wilkins applied for a first-shift position but was denied due to his seniority. As a result, Mr. Wilkins continued to work the third shift.

76.    On April 2, 2023, Mr. Wilkins requested a religious accommodation of two days of unpaid leave to observe Passover, a holy religious holiday, which is observed at sundown.

77.    Defendant's HR department refused to approve Mr. Wilkins's religious accommodation request and left it up to

Defendant's management employees' discretion to authorize the days off requested.

78.    Mr. Wilkins's supervisors and managers refused to accommodate Mr. Wilkins's religious accommodation request for unpaid time off to observe Passover.

79.    Mr. Wilkins did not attend work on April 6, 2023, because it conflicted with his observation of Passover.

80.    Defendant issued Mr. Wilkins a Seventh step disciplinary action for not attending work on April 6, 2023, and fired him on April 13, 2023.

## STATEMENT OF CLAIMS

81.    The Commission incorporates by reference the allegations set forth in the preceding paragraphs.

82.    The practices complained of in paragraphs 27 through 80, and in each count below, have deprived Mr. Wilkins of equal employment opportunities and otherwise adversely affected his status as an employee because of his religion, in violation of Title VII.

83.    The practices complained of were intentional.

84.    The practices complained of were conducted with malice and with reckless indifference to Mr. Wilkins' federally protected rights.

## Count 1: Discrimination Based on Religion

85.    The Commission incorporates by reference the allegations set forth in the preceding paragraphs.

86.    Defendant engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by failing or refusing to provide Mr. Wilkins with a reasonable accommodation of his sincerely held religious beliefs.

87.    Defendant engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 U.S.C. 2000e-2(a)(1), by terminating Mr. Wilkins employment because of his religion.

88.    Mr. Wilkins sincerely holds a religious belief of observing the Sabbath, which requires that he not work Friday sundown to Saturday sundown.

89.    Mr. Wilkins observation of the Sabbath conflicted with Defendant's second-shift schedule and with Defendant's mandatory Saturdays.

90.    Mr. Wilkins informed Defendant that the second shift schedule and mandatory Saturdays conflicted with his religious beliefs.

91.    Defendant revoked Mr. Wilkins's religious accommodation of excusing his Friday absences while working the second shift.

92.    Defendant refused to accommodate Mr. Wilkins's request to not work mandatory Saturdays and instead took disciplinary action against Mr. Wilkins for not working on two Saturdays in October 2022 and two Saturdays in December 2022.

93.    Mr. Wilkins possesses a religious belief of observing holy Jewish holidays, including Passover, which conflicted with his third-shift schedule in 2023.

94.    Mr. Wilkins informed Defendant regarding his conflict of working during two Passover nights and sought an accommodation of unpaid time off.

95.    Defendant refused to accommodate Mr. Wilkins's request for unpaid time off to observe Passover.

96.    Defendant's failure to accommodate Mr. Wilkins's sincerely held religious belief resulted in adverse actions against Mr. Wilkins, including termination of his employment.

## Count 2: Retaliation

97.   The Commission incorporates by reference the allegations set forth in the preceding paragraphs.

98.   Defendant violated Section 704 of Title VII, 42 U.S.C. § 2000e-3, by retaliating against Mr. Wilkins for opposing Defendant's religious discrimination.

99.   Defendant retaliated against Mr. Wilkins by subjecting him to disciplinary action that led to Defendant's termination of his employment.

100.  Mr. Wilkins engaged in statutorily protected activity when he objected to Defendant's revocation of his religious accommodation in August 2022.

101.  Defendant retaliated against Mr. Wilkins by issuing him attendance violations for not working during the Sabbath on Friday, August 5, 2022.

102.  Mr. Wilkins engaged in statutorily protected activity when he opposed Defendant's October 2022 disciplinary action for not working during the Sabbath.

103.  Defendant retaliated against Mr. Wilkins by requiring him to work on Saturday, December 3, 2022, and December 10, 2022, in violation of his religious observance.

104.  Defendant retaliated against Mr. Wilkins by issuing him multiple attendance violations for not working during the Sabbath in December 2022.

105.  Mr. Wilkins engaged in statutorily protected activity when he filed a charge of discrimination with MDCR in January 2023 based on religious discrimination by Defendant.

106.  In March 2023, Defendant retaliated against Mr. Wilkins by applying its 10-day disciplinary layoff without pay against Wilkins.

107.  Defendant retaliated against Mr. Wilkins by refusing to grant him unpaid time off to observe Passover in March 2023, and then issuing him additional attendance violations that led to his termination of employment.

## **PRAYER FOR RELIEF**

The Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in

active concert or participation with it, from engaging in any

employment practice which discriminates based on religion, including

the failure to provide accommodation for sincerely held religious beliefs,

retaliating against employees who complain of religious discrimination,

or terminating employees based on religion.

   B.   Order Defendant to institute and carry out policies,

practices, and procedures that provide equal employment opportunities

to persons protected by Title VII and which eradicate the effects of its

past and present unlawful employment practices, including religious

discrimination.

   C.   Order Defendant to make Mr. Wilkins whole by providing

appropriate back pay with pre-judgment interest and lost benefits, in

amounts to be determined at trial, and other affirmative relief

necessary to eradicate the effects of Defendant's unlawful employment

practices, including but not limited to reinstatement or front pay.

   D.   Order Defendant to make Mr. Wilkins whole by providing

compensation for past, present, and future pecuniary losses, resulting

from the unlawful employment practices complained of herein, in

amounts to be determined at trial, and other affirmative relief as

necessary to eradicate the effects of Defendant's unlawful employment practices.

     E.    Order Defendant to make Mr. Wilkins whole by providing compensation for past, present, and future non-pecuniary losses resulting from the unlawful employment practices described above, including, emotional pain, suffering, inconvenience, humiliation, and loss of enjoyment of life, in amounts to be determined at trial.

     F.    Order Defendant to pay Mr. Wilkins punitive damages for engaging in intentional discrimination with malice or with reckless indifference, in amounts to be determined at trial.

     G.    Grant such other further relief as the Court deems necessary and proper in the public interest.

     H.    Award the Commission its costs in this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Dated: June 5, 2025

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

ANDREW ROGERS
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

KENNETH L. BIRD
Regional Attorney

OMAR WEAVER
Assistant Regional Attorney

*/s/ Dale Price*
Dale Price (P55578)
Trial Attorney
DETROIT FIELD OFFICE
477 Michigan Ave, Room 865
Detroit, Michigan 48226
(313) 774-0028
dale.price@eeoc.gov